FILED

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA** 2023 JAN 19  PM 2: 44

**SIMON TUSHA,**

U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS, FLORIDA

       **Plaintiff,**

**v.**

Civil No. 2:23-cv-00042-SPC-KCD

**E2COMPLY, JAMES RICHMOND,**
**JEANNE RICHMOND, IEPRENEUR, LLC,**
**ALEXIS KHAZZAM, AVANTI INSIEME, LLC,**
**LK CAPITAL, MATTHEW LEITER,**
**MICHAEL MAERTENS, e2COMPANIES, LLC,**
**e2 ESA BOND I, LLC, e2 ESA BOND II, LLC,**
**MICK LAW,  BRADFORD A. UPDIKE, ESQUIRE,**
**DAVID SHANE SMITH, ESQUIRE,**
**PATRICK D. HOUSTON, ESQUIRE,**
**ROSS C. ALLEN, ESQUIRE,**
**ROBERT R. KAPLAN, ESQUIRE,**
**KAPLAN VOEKLER CUNNINGHAM & FRANK**
**WHITEFORD, TAYLOR & PRESTON, L.L.P.,**
**ARETE WEALTH MANAGEMENT**
**KARLTON KLEIS**

       **Defendants.**

**ACTION IN EQUITY**


    Simon Tusha, Plaintiff, pro se, hereby brings this action in equity against the above-
named Defendants individually and collectively, seeking actual, compensatory, and punitive
damages. Upon investigation, information and belief, Plaintiff avers as follows:


        **THE PARTIES**


    1.  Defendant, e2Comply (hereinafter "e2COMPANIES") is a Florida based Limited
Liability Company (LLC)) with headquarters at 8901 Quality Road, Bonita Springs, Florida and
is purportedly the parent company in control of all the e2COMPANIES named herein;  all of

- 1 -

these named entities are defacto alter egos of James Richmond and Jeanne Richmond individually and collectively acting and doing business on their behalf.

2.   Simon Tusha, Plaintiff, (hereinafter individually as "TUSHA") is a Florida resident residing at 13627 Pine Villa Lane, Fort Myers, FL 33912.

3.   Defendant, James Richmond (hereinafter individually as "RICHMOND-1") is a resident of Florida with address 577 Roma Ct Naples, FL 34110. "Richmond-1" is the Chief Executive Officer of e2COMPANIES as well as the other named Defendant Companies. "Richmond-1" and his wife, Defendant, Jeanne Richmond, together, own an 84% stake in e2COMPANIES and its subsidiaries through Iepreneur, LLC and other herein named Defendant business entities.

4.   Defendant, Jeanne Richmond, Chairman of e2COMPANIES, (hereinafter individually as "RICHMOND-2") is a resident of Florida with address 577 Roma Ct Naples, FL 34110. Defendant, "Richmond-2" is an Officer and equal shareholder of e2COMPANIES and other named Defendant Companies along with "Richmond-1" as stated above.

5.   Defendant, Alexis Khazzam (hereinafter individually as "KHAZZAM") is a resident of Florida with address unknown. "Khazzam" holds a 14% stake in e2COMPANIES through Avanti Insieme, LLC and/or other herein named Defendant entities.

6.   Defendant, Michael Maertens (hereinafter individually as "MAERTENS") is a resident of Florida with address unknown. "Maertens" is the Chief Financial Officer of Defendant, e2COMPANIES and/or other named Defendant entities.

7.   Defendant, e2COMPANIES (hereinafter "e2C") is a Florida based Limited Liability Company with headquarters located at 8901 Quality Road, Bonita Springs, FL 34135.

8.   Defendant, e2 ESA BOND I, LLC is a Florida based Limited Liability Company owned and operated by Defendants "Richmond-1," "Richmond-2," and "Khazzam" with headquarters located at 8901 Quality Road, Bonita Springs, FL 34135.

- 2 -

9.  Defendant, e2 ESA BOND II, LLC is a Florida based Limited Liability Company owned and operated by Defendants, "Richmond-1," "Richmond-2," and "Khazzam" with headquarters located at 8901 Quality Road, Bonita Springs, FL 34315.

10.  Defendant, MICK LAW, (hereinafter individually as "MICK") is a law firm and auditor acting on behalf of the named Defendants and/or Defendant entities with offices located at 816 South 169th Street, Omaha, NE, 68118

11. Defendant, Bradford Updike, (hereinafter individually as "UPDIKE") is a licensed law practitioner located at 816 South 169th Street, Omaha, NE 68118.

11(a) David Shane Smith (hereinafter individually as "SMITH") is a lawyer licensed in the State of Florida, (Florida Bar Number 361682) with address at Two James Center, 1021 E. Cary Street, Suite 1700, Richmond VA 23219

11(b) Patrick D. Houston (hereinafter individually as "HOUSTON") is a lawyer licensed in the state of Virginia who works with Defendant, Whiteford, Taylor & Preston, L.L.P., located at 1021 East Cary Street, Suite 1700, Richmond, VA 23219

11(c) Ross C. Allen (hereinafter as "ALLEN") is a lawyer licensed in the state of Virginia who works with Defendant, Whiteford, Taylor & Preston, L.L.P., located at 1021 East Cary Street, Suite 1700, Richmond, VA 23219.

11(d) Robert R. Kaplan Jr. (hereinafter as "KAPLAN") is a lawyer licensed in the state of Virginia who works with Defendant, Whiteford, Taylor & Preston, L.L.P., located at 1021 East Cary Street, Suite 1700, Richmond, VA 23219.

- 3 -

11(e) Whiteford, Taylor & Preston, L.L.P, (hereinafter as "WHITEFORD" is a law firm acting on behalf of the named Defendants and/or Defendant entities with offices located at 1021 East Cary Street, Suite 1700, Richmond, VA 23219.

11(f) Kaplan Voekler Cunningham & Frank ((hereinafter as "VOEKLER") is a law firm acting on behalf of the named Defendants and/or Defendant entities with offices at 5425 Discovery Park Blvd, Unit 101, Williamsburg VA 23188.

11(g) Defendant, LK CAPITAL (hereinafter "LK") is the investment coordinator for e2 with an address of 1706 Kenilworth Street, Sarasota, FL 34231

11(h) Defendant, Matthew Leiter (hereinafter individually as "LEITER") is a resident of Florida with an address of 1706 Kenilworth Street, Sarasota, FL 34231.

11(i) Defendant, Arete Wealth Management (hereinafter individually as "ARETE") with an address of 1115 W. Fulton Market, 3rd Floor, Chicago, IL 60607.

11(j) Defendant Karlton Kleis (hereinafter individually as "KLEIS") a partner at Arete Wealth Management with an address of 1115 W. Fulton Market, 3rd Floor, Chicago, IL 60607.

I.                                JURISDICTION

12. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, the Federal Question Statute and 18 U.S.C. § 1962(c) RICO; see Ray v. Spirit Airlines, Inc., 836 F.3d 1340,

- 4 -

1348 (11th Cir. 2016).  This Court has personal jurisdiction over the individual defendants pursuant to 18 U.S.C. § 1965(d).

## II.                         FACTUAL BACKGROUND
## PLAINTIFF TUSHA

13. Plaintiff "TUSHA" is a well-known and highly skilled expert in the technology field including the operation of Data Processing Centers. "TUSHA" has a long history in the technological field which includes serving Strategic Negotiator for Google. As such, "TUSHA" is highly sought as a professional consultant by companies around the Globe not only due to his industry knowledge, but his impeccable business reputation and worldwide contacts that he has established over his decades long career.

14. Plaintiff "TUSHA", in 2015, found himself in trouble with the Internal Revenue Service for taxes which resulted in a federal conviction and incarceration. "Tusha" has never hidden or attempted to hide his criminal record from anyone and in fact, has fully disclosed his record to the defendants, business clients, personal friends, and anyone he does business with.

15. On or about, September 2020, "Tusha" entered into several contractual agreements with Defendants "Richmond-1," "Richmond-2," "Khazzam," and "e2C" including an employment agreement where "Tusha" was to receive specific compensation as set forth in the agreements including stated monthly fees, salary, benefits, and reimbursement for expenses including expenses for a Florida home. The Defendants have intentionally defaulted on all those agreements as described in greater detail infra.

### DEFENDANTS RICHMOND-1-2 & KHAZZAM

16. Defendant's "Richmond-1," "Richmond-2," "Khazzam," "e2C" et al named herein, engaged in a criminal scheme to lure "Tusha" to Florida as part of another criminal scheme the Defendants were employing through concerted actions to defraud private investors and bond holders as set forth in greater detail infra.

17. To effectuate fraud upon "Tusha," the Defendants individually and collectively contrived a scheme whereby they would provide "Tusha" $1.9 million to acquire a home in Fort Myers, Florida, the purpose of which was that "Tusha" would be at the disposal of the Defendant's including physical employment at the Defendant companies. In fact, "Tusha" was misled to believe that joining the Defendant's business through contractual consulting agreements and employment contracts was legitimate and beneficial to him, however, he would later learn that he was being used as the principal architect (pawn) that would enable the Defendants to grow their companies to a valuation of over $700 million that would be used to defraud private investors, bond holders and "TUSHA" as described in greater detail infra.

18. Based upon false representations from "Richmond-1," including but not limiting to that "e2C" would provide "TUSHA" security for his Intellectual property, (his expertise in designing a double inverter system to be used in connection with a Patent pending design known as R3Di), the security being ownership of his Florida home and equity in another Florida LLC formed by "TUSHA" and Defendants "Richmond-1," "Richmond-2," and "Khazzam," whereby "TUSHA" would own a 34% stake in the LLC known as Mission Critical e2 LLC., (hereinafter "MCe2"); upon formation of "MCe2," "TUSHA" relocated his family from Maryland to Florida where he now resides in the residence he was supposed to own free and clear absent tax consequence which was in fact, the primary inducement that caused "TUSHA" to relocate to Florida and join forces with the "the DEFEDANTS" as both an employee and service provider. This creative inducement called for "e2C" to pay $1.9 Million in cash to buy "TUSHA" the Florida residence, then "KHAZZAM" was to obtain a mortgage on the property so that "e2C" could recover its cash outlay. Moreover, by "e2C" paying the mortgage and issuing annual 1099's to "TUSHA" expensed to "e2C," he would own the home without any cost. Most important, in exchange, "TUSHA'S" tax liability would then amount to only the annual amounts paid by "e2C" and "e2C" would gain "TUSHA'S" knowledge and business contacts. This deal was part of and parcel to all the agreements executed by "TUSHA" as set for herein.

19. The "Richmond-1 & -2" Defendants own 66% of "MCe2" and what followed as set forth in greater detail below, demonstrates that the named defendants had no intention of following corporate formalities nor did they respect their fiduciary obligations to "TUSHA" with regard to his ownership interest in "MCe2." In fact, as demonstrated below in greater detail, the named Defendants created a complex web of subsidiary businesses including "MCe2" which are defacto "e2C" alter egos, and by design, are for the express purpose of facilitating an elaborate Ponzi scheme for the benefit of the Richmond's, Khazzam et al. This nefarious criminal scheme now includes defrauding "TUSHA" via theft of his intellectual property now patented, his knowledge, business resources, customer base and decades long impeccable business reputation being converted by the Defendants to a criminal scheme as set forth herein in violation of the RICO Act. In fact, "TUSHA" unwittingly delivered a contract potentially worth billions of dollars in revenue to the Defendants. However, the Defendants show little interest in pursuing the fruit of that contract's long-term revenue. Instead, it is being used by the Defendants for the immediate purpose of furthering their Ponzi scheme.  Further, "TUSHA," upon making his decision to join "e2C," relied on the representations of "the Defendants" as outlined above, thus had no reason to believe that his new employment was anything but solid. Consequently, "TUSHA" not only designed the double inverter mechanism for the R3Di (as an inventor) on behalf of "MCe2," but "TUSHA" convinced a longtime associate business, Herbata, located in Ireland, to enter into a contract with "MCe2" worth $3 billion dollars over the next 15 years. As set forth in greater detail below, the herein named Defendants individually and collectively worked closely together to hide and conceal from "TUSHA" and others including but not limiting to Herbata, their actual business intentions, operations, financials, fundraising activities and other information including but not limiting to illegal/criminal actions being perpetrated upon "TUSHA," investors and bond holders through misrepresentations, false statements and other pernicious methods of secretly carrying out fraudulent activity.

20. The herein named Defendants individually and collectively misled "TUSHA" to believe that "e2C" was to provide financing for the operations of "MCe2" to include payroll for employees, salaries and expenses for "TUSHA" including but not limited to his home in Florida, as well as costs of further development of R3Di taken on by "TUSHA" and "MCe2."

In fact, the Patent was to be issued to "MCe2" with "TUSHA" added as an inventor for his work. It is clear from the facts adduced herein that the Defendants had no intention of doing business with "TUSHA" once they obtained his expertise in the development of R3Di and received the contract with Herbata. This fact is amply demonstrated below in greater detail to include that once "TUSHA" completed his work on the Patent, (R3Di), which was the catalyst for "TUSHA" to be able to procure the "Herbata" contract, the Defendants proceeded to misrepresent to investors and bondholders that revenue from the Herbata contract would commence in 2023 when in fact, the project is not even permitted yet and not projected to produce revenue until 2025. This was done to obtain new investors and bond proceeds predicated on fraudulent representations as set forth in greater detail below.  The relevant acts of mail fraud, wire fraud, fraudulent inducement, and theft by deception of intellectual property from "TUSHA," as well as other unlawful concerted actions that resulted in financial loss to "TUSHA" are set forth infra with specificity as required pursuant to Rule 9(b) F.R.Civ.P

21. Defendants "RICHMOND-1," "KHAZZAM," and "MAERTENS" individually and collectively conspired with one another, concocted and executed a criminal scheme intended to and which did in fact, steal Plaintiff's intellectual property worth more than $200 million dollars proven by inter alia actual Valuations of the R3Di microgrid system Patent.

22. Defendant's "RICHMOND-1," "RICHMOND-2," "KHAZZAM," "MAERTENS," and "e2C" individually and through concerted actions conspired with one another to execute a complex multi-faceted scheme to lure Plaintiff into a Ponzi scheme, the purpose of which was to steal his knowledge, business contacts and to cause Plaintiff to procure contracts for the benefit of "e2C" under the guise of another entity, "MCe2," then utilize the contract's actual value to fraudulently raise money from new investors through another bond issuance from which the "Defendants" continue to steal money through these deceptions.

## III.                    THE RICO ENTERPRISE &
## CONCERTED ACTION ALLEGATIONS

23. Plaintiff incorporates by reference and hereby adopts paragraphs 1 through 22 as though fully set forth in this section. Defendants "RICHMOND-1 & -2," "KHAZZAM,"

- 8 -

"MAERTENS," and "e2C", individually and collectively, formed an association-in-fact, "RICO Enterprise," the purpose of which was to steal from the Plaintiff and transfer private investment and/or bond proceeds from Defendant business "e2C" over to their alter ego "subsidiaries" absent following corporate formalities being enforced by anyone, which created a disguise for funds siphoned off for the personal benefit of "the RICHMOND DEFENDANTS" and many of their family members as well as "KHAZZAM" and "MAERTENS." Through various concerted actions, set forth in this section, the collective Defendants carried out the scheme to steal money and property from Plaintiff as alleged through fraudulent transactions, material misrepresentations, fraudulent inducement, acts of mail fraud, wire fraud, fraudulent conversion and theft of Intellectual Property, contractual rights, and Patent rights via Ultra Vires Acts and other unlawful acts described herein, committed over a period of years. The timeline of relevant events is as follows:

    A. The Defendants named in Paragraph 21, by their own account, stated that after several years of "e2C" being in business, it had never turned a profit and had raised over $100 MILLION dollars from private investment and bond proceeds. However, Defendant "RICHMOND-1" told Plaintiff in September 2020, that "e2C" had a Patent pending project that required his expertise to complete that would be worth billions of dollars if Plaintiff could get it to work. At the same time, "RICHMOND-1" failed to disclose that "e2C" has NEVER EARNED PROFITS and exists primarily from investor money and bond proceeds. Upon recent investigation, information and belief, Plaintiff avers that "e2C" is obtaining investor money and/or bond proceeds by misrepresenting expected revenues and the timing of those revenues due from potential projects when offering high interest yielding bonds to operate "e2C" and its affiliate alter egos. With no significant revenues and ZERO profits, "RICHMOND-1" & "RICHMOND-2" (hereinafter "the RICHMOND DEFENDANTS") continued a pattern of raising new bond offerings using the proceeds to repay old bond holders principal and interest, thus encouraging new bond holders to invest in the company to earn the same high yield returns which in reality, were just proceeds of new bonds and/or private investment. Plaintiff recently discovered that the RICHMOND Defendants have twice been accused of running a Ponzi scheme and worse, bragged about completing construction of a personal home worth over $10 million dollars and seeking to buy a JET and international house in the event they need to "escape." Again, "e2C" has never earned a profit, but rather the RICHMOND DEFENDANTS simply converted the investor bond loan capital to their personal benefit

using "e2C" and other companies as their alter egos and personal piggybank.

B.  From September 2020 through the present, Defendant "MAERTENS," individually and acting as CFO for Defendant "e2C," conspired with "the RICHMOND DEFENDANTS" and "KHAZZAM" and through concerted action, worked closely with one another to hide from Plaintiff, investors and bond holders, the true nature of the business operations, including financials, actual revenues, debt to asset ratios and fundraising information via fraud, misrepresentation, false statements, and other pernicious activity.   It must be noted that Defendant "RICHMOND-2," is the President of "e2C" driving a $280,000 Mercedes when the company is existing from investment money.

C. To further conceal this massive fraud, "the RICHMOND DEFENDANTS" created a complex web of subsidiary businesses including Mission Critical e2, LLC., for the express purpose of committing fraud upon the Plaintiff as set forth in greater detail infra. Plaintiff is not only a member of "MCe2," but a 34% shareholder who pursuant to Paragraph 9(c), is required along with ONE of the TWO "RICHMOND DEFENDANTS" to participate in any and all decisions regarding operation of the company. (See Exhibit-A) In fact, Plaintiff has never been consulted on any decisions and "the RICHMOND DEFENDANTS" have unilaterally absent cause, chosen to inter alia initiate unlawful takeover of "MCe2" and dictate how they will conduct its business.  "RICHMOND-1" by letter, stated to "TUSHA" that "MCe2" is  "defunct" with no assets to operate (See Exhibit-B) when in fact, the only thing that has changed since "MCe2" was founded is that Plaintiff brought in a contract worth $3 billion dollars and developed the R3Di system so that it would actually work, resulting in a Patent valuation of $500 million.  To facilitate the Ultra Vires takeover of "MCe2", the named defendants, on or about December 5, 2022, terminated Plaintiff's employment and cancelled his sub-contractor agreements without justifiable cause, in violation of the "MCe2" operating agreement ostensibly to hide from investors and bond holders Plaintiff's felony conviction which Plaintiff disclosed in 2020 as set forth clearly in written agreements at issue in this litigation.

D.  To demonstrate the massive deception used to lure Plaintiff into the Defendant's Ponzi scheme, the following timeline of events is relevant to the overall fraud on the Plaintiff and it is necessary to understand the following events described in relation to the timeline of other frauds alleged that make up the predicate act RICO violations as well as establish the RICO enterprise.

- 10 -

a) June 25, 2020, James Richmond ("RICHMOND-1") contacts Plaintiff "TUSHA" regarding his R3Di project seeking Plaintiff to review drawings. Plaintiff agrees and concludes that the product presented, R3Di, "won't work as presented." "Richmond-1" offers Plaintiff employment and a partnership in exchange for Plaintiff redeveloping the R3Di system into a working viable solution for data processing centers.

b) November 2020, Plaintiff travels from Maryland to Florida to work with "Richmond-1" and his team. "Richmond-1" is satisfied that Plaintiff can make the R3Di work.

c) December 2020, "MCe2" is formed, and Plaintiff is offered the position of President in "MCe2" and a 34% stake in the "MCe2" via shares of the LLC.

d) December 22, 2020, upon discussion with "e2C" company principles, regarding R3Di technology, Tim Richmond of "e2C" provided technical information. Plaintiff discovered on this call that the R3Di was single inverter based but was designed to operate in parallel with the utility source.

e) January 21, 2021, Plaintiff sent his associate, Craig Kurtzhals, to visit "e2C" where he met with Tim Richmond & James Richmond. Kurtzhals witnesses a demonstration of the transfer of power from utility to battery through the single inverter and circuit breaker pair. Kurtzhals questioned how the power was conditioned when load was operating on the utility. Kurtzhals was told that the R3Di was not intended to operate in that manner.

f) As a result of Kurtzhals meeting with "Richmond-1," on March 15, 2021, Kurtzhals was hired to work directly for "MCe2." (Kurtzhals has been a long-time business associate of Plaintiff and has worked with Plaintiff on many projects over many years).

g) On March 23, 2021, Kurtzhals met with AHA Consulting Engineers, the Engineers of record for a prospective data center client for "e2C." R3Di technology was discussed and a demonstration with transfer of power from utility to battery was performed. The demonstration was successful, however, AHA's lead technical engineer espoused some level of skepticism whether the R3Di would be appropriate for the data center market.

h) On April 5, 2021, a meeting was scheduled with Compass Data Centers at their data center sites. After consultation with Kurtzhals, the meeting was cancelled so that a strategy could be developed for a double conversion product suitable for data center applications.

i) On April 6, 2021, Kurtzhals, Plaintiff et al., discuss the suitability of the R3Di product for the data center market. It is determined that only a double conversion-based product would be marketable. Plaintiff informs "e2C" that a double conversion product must be developed for data center clients.

j) On April 6, 2021, Plaintiff meets with EPC (inverter manufacturer) to discuss feasibility of double conversion system. Upon discussion, it was confirmed that Plaintiff's concept of a double inverter system could be accomplished using an EPC converter being combined with the R3Di product. Design of the double conversion R3Di begins immediately.

k) On May 3, 2021, the April 5, 2021, meeting continued with EPC regarding technical aspects of the R3Di double conversion technology. Positive feedback was received, and it was confirmed by "e2C" product development that double conversion technology would be necessary to employ the R3Di product in the data center market.

l) On May 21, 2021, Development of the double Conversion R3Di system begins.

m) On July 21, 2021, "MCe2" engages HDR Engineering Consultant to develop testing procedures including the Integrated System Test. (IST)

n) On May 10, 2022, First successful test of IST double conversion occurs.

o) On December 2, 2022, Plaintiff receives an email from "RICHMOND-1" terminating his contracts, employment and advising that "MCe2" is defunct, has no money and is millions in debt. (an act of wire fraud)(See Exhibit-B)

24. It is clear from the above timeline of events, that Plaintiff helped to conceptualize, design, improve and invent a Patent for and on behalf of "MCe2" intended for "e2C's" principle product, R3Di or "ready" unit which is a natural gas fueled microgrid, and obviously, not

- 12 -

functional or suitable for data processing centers as it stood in its then present status. Once the Patent was issued by the United States Patent Office, "the RICHMOND DEFENDANTS" hid from Plaintiff and Kurtzhals the fact that their names were "EXLUDED" as inventors on the U.S. Patent Application in violation of U.S. Patent Law, thereby defrauding Plaintiff, Kurtzhals and the U.S. Patent Office and again, this concerted unlawful action was part of and parcel to the Defendants overall ongoing criminal scheme. The Patent Application was sent to the U.S. Patent Office via U.S. Mail in violation of 18 U.S.C. §§ 1341, 1349 (Mail Fraud & Conspiracy to commit mail fraud) which are predicate act violations of the federal RICO statutes as well as Florida RICO statutes. In fact, "the RICHMOND DEFENDANTS" falsely proffered on the U.S. Patent Application that the only inventors were James Richmond, ("RICHMOND-1"), Tim Richmond (RICHMOND 1's Nephew) and Scott Gall, thereby depriving Plaintiff and Kurtzhals of their rights as inventors in violation of U.S. Patent LAW. The resulting financial loss is clearly established by the fact that the patent was recently noted in a "Valuation Report" to be worth approximately $500 Million Dollars, thus Plaintiff has been deprived of his share of that value. This fact is clearly ONE of the motivating factors for the Defendant's collective and concerted actions in furtherance of their RICO conspiracy. The unlawful concerted acts described were also part of and parcel to the Defendant's theft of Plaintiff's intellectual property, his conceptual ideas, his designs, and other input relevant to the Patent of the R3Di system itself and it is in fact, Plaintiff's design of the double inverter system that made the R3Di double inverter system viable for data center applications and that which resulted in Plaintiff securing the "MCe2" contract with Herbata estimated worth at least 3 billion dollars. (See Exhibit-C)

24(a). The Richmond Defendants, James and Jeanne Richmond, went to great lengths and enormous effort to create not only a vast conspiracy to effectuate the frauds set forth herein, but equally so, to achieve the objectives of the conspiracy, that effort required participation of a wide range of business associates and business entities to carry out concerted actions, in some cases, lawful activity which enabled the Richmonds to benefit from their frauds. For example, the Ponzi scheme required a vast source of funds and the Richmonds found that source in Arete Wealth Management (hereinafter "Arete") who sells bonds to its customers for a commission of 10% and that source has net the Richmonds over $100 million

in bond proceeds. To unlawfully siphon money off the top of bond transactions, Defendants Alexis Khazzam and Mathew Leiter (Brother-in-law-to Khazzam) are the owners of LK Capital which takes a 2% success fee from the gross bond issuances. "LK" is not registered with FINRA or the SEC and upon information and belief, Defendant Richmond sought the creation of a cover up to hide this fact from the financial records of "e2C" which was refused by the recipient of the request. It is believed that others are involved in skimming from the gross bond receipts. "Arete," "LK," & Khazzam act as quasi "investment coordinators" and attempt to disguise the 2% skim as a "success fee." This fee is not authorized by the indenture or the bond documents. Defendant Whiteford, Taylor & Preston, L.L.P., is a law firm used in connection with the Richmond's lawful and unlawful activities, thus make up a significant part of the RICO enterprise as defined in the Act. Defendants, Robert Kaplan, Jr., Ross Allen, Patrick Houston, & David Shane Smith are all attorneys associated with Whiteford, Taylor & Preston, L.L.P., who engage in both lawful and unlawful business as set forth herein and are an essential piece of the overall scheme because they provide cover for the entire group of Defendants that has allowed the scheme to continue for years absent detection. Robert Kaplan was formerly associated with Kaplan, Voekler, Cunnigham, & Frank with ties to Arete, however, Kaplan had a falling out and changed his affiliation as referenced above. Defendant Karlton Kleis is a principle player at Arete without whom the Defendants could not achieve any objective of the conspiracy because Arete is the money supply that has kept "e2COMPANIES and their subsidiaries afloat for years despite retained earnings of NEGATIVE $18.8 MILLION with astronomical annual losses i.e., in 2021 alone a loss of -$8,867,526.48 with stockholder's equity at negative -$11,318,525.48. (See Exhibit-H in its entirety). Each Defendant named above is equally culpable as all the other defendants because the entire group functions as a unit for both legal and illegal purpose, thus constitute an association-in-fact under RICO as alleged above. Consequently, each Defendant is equally culpable for the unlawful actions of the other.

25. Plaintiff hereby incorporates by reference and adopts paragraphs 1 through 24 as though fully set forth in this section. "The Richmond Defendants," "KHAZZAM," "MAERTENS," "e2C," E2C BOND I, LLC, and E2C BOND II, LLC, are all alter egos of one another under the total control of Defendants James Richmond, Jeanne Richmond and Alexis

Khazzam and each company has a purpose in carrying out objectives of the RICO conspiracy. Unnamed Defendant UMB Bank and named Defendants Bradford Updike, Esquire and Mick Law are essential players in the fraud and are not only aware of the Richmond's Ponzi scheme but are complicit in misrepresenting facts to the investors as demonstrated below. UMB bank is the supposed gatekeeper and watch dog who acts on behalf of the investors and bond holders. UMB has a duty to insure "e2C's" compliance with contract covenants and the indenture relevant to the bond holders, but is complicit in the fraud thereby allowing the scheme to continue absent detection. Two critical objectives of the RICO conspiracy are also critical elements the Defendants had to complete in order to continue the Ponzi scheme absent detection:

a) "The RICHMONDS" need to redesign the R3Di and integrate a double inverter design but do not know how do to do it, thus they need assistance, so they reach out to Plaintiff "TUSHA" and through a series of fraudulent inducements, they gain "TUSHA's assistance making him an employee of "e2C," a shareholder in "MCe2," the President of "MCe2" as well as provide "TUSHA" cash for a $1.9 million home for "TUSHA" that was to be expensed to "e2C" in exchange for "TUSHA" redesigning the R3Di to include the double inverter system. Once this was accomplished, the "RICHMOND DEFENDANTS" and "KHAZZAM" could cover up the false statements made to the investors by deploying these systems. As of this writing, NONE are in operation.

b) "The RICHMONDS" needed Plaintiff to bring customer clients to "e2C" via "MCe2" for two reasons:

(1)  to provide cover for many years of deceiving investors to believe the "e2COMPANIES were producing enough revenues to pay principle and interest to bond holders; and

(2)  to deceive "TUSHA" that he had equity in the patent and potential profits from contracts he procured via his interest in "MCe2" which in reality, provided cover for, OR, a valid potential solution for all the fraud inflicted by the "RICHMONDS" upon the investors and bond holders over a period of many years. In fact, the Herbata contract and a working R3Di could possibly catapult "e2C" to a viable and profitable business, but "THE RICHMONDS" have ZERO interest in that scenario as demonstrated by their concerted unlawful actions set forth in the timeline above and by the actions taken as of this writing detailed below:

- 15 -

The first unlawful objective described at a), was achieved by LAWFUL means, that being, "TUSHA" and Kurtzhals did in fact redesign the R3Di to incorporate the double inverter technology thereby making the R3Di viable for data center applications. This is critical to the Defendants because they already told investors that R3Di's were operating all over the country when in fact, they were not. Second and equally important, "TUSHA" did in fact, unknowingly bring in client/customers including Herbata to "MCe2" not knowing that "the RICHMOND DEFENDANTS" and "KHAZZAM" had other ideas that included internally flipping Herbata over to "e2C" while unilaterally saddling "MCe2" with Millions of "e2C" debt which simply disguised their Ponzi scheme and masked the fact that "e2C" has little revenue, few contracts which do not produce enough revenue to pay interest OR principle to the bond holders and now, <u>absent "TUSHA,"</u> because "TUSHA" has become aware that "The RICHMOND DEFENDANTS" and "KHAZZAM" are now misrepresenting the Herbata contract as though it is producing revenues when in fact, it is NOT and will not until 2025. And, "the RICHMOND DEFENDANTS," "KHAZZAM," "UPDIKE," "MICK LAW," "MAERTENS," "e2C," and other named defendant companies continue to misrepresent through lies and omissions, that the Herbata contract is now funding operations of "e2C" and or "MCe2" when in fact, it is not.

     c) "TUSHA was deceived by "the RICHMOND DEFENDANTS" and "KHAZZAM" through a series of misrepresentations described above and in greater detail below, that included $1.9 million to buy a home as part of a compensation package that was to be expensed to "e2C." This did not materialize as it was presented and the unlawful actions that followed, have left "TUSHA" unemployed, his home in jeopardy and millions in unlawful debt.

     d) "The RICHMOND DEFENDANTS," "KHAZZAM," "MAERTENS," and the other herein named Defendants, unilaterally changed the real estate contracts and back dated them in an outright extortion of "TUSHA" whereby everything offered to "TUSHA" which he accepted as true when making his decision to join forces with the Defendant businesses, was subsequently extorted back to "the RICHMOND DEFENDANTS" thereby defrauding "TUSHA of his shares in "MCe2", his home, Intellectual Property, his interest in the Patent which he helped to redesign so that it would work and the value of the contracts he procured for the benefit of "MCe2" i.e. value from which he ("TUSHA") was to receive 34% of the profits. The  Defendants actions demonstrate that they had no intention of

paying "TUSHA" anything once they had a workable design for the R3Di and once "TUSHA" produced valid contracts (Herbata) this enabled the Defendants to continue to defraud investors through their ongoing Ponzi scheme which to date, exceeds $100 MILLION and rapidly climbing.

e) By fraudulently converting "TUSHA's" intellectual property, defaulting on all the sub-contractor service agreements, unilaterally VOIDING the agreement to obtain a mortgage on "TUSHA's" residence and failing to expense the costs of said $1.9 million mortgage to "e2C" as promised, and fraudulently converting "TUSHA's" shares in "MCe2" to a zero value by stealing the Herbata contract and using it to gain a $230 Million Evaluation for "e2C," the defendants have effectively continued the coverup of their Ponzi scheme, stolen more than $161 Million in value belonging to "TUSHA," defrauded the bond holders et al., leaving "TUSHA" with $2 Million in unlawful debt, for which, the Defendants have filed a frivolous foreclosure action in state court based upon false premise.  Petitioner seeks an order from this court enjoining Defendants from pursuing said lawsuit pendent lite. (Motion for TRO and Preliminary Injection filed herewith)

## IV.   PONZI SCHEME-CONSPIRACY & CONCERTED ACTIONS - CAUSATION OF "TUSHA'S"  INJURIES

26.  "e2C" and all of its subsidiaries including but not limited to "MCe2," qualify as 'an association-in-fact' enterprise, which need not have any structural features 'beyond a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose," Boyle v. United States, 556 U.S. 938, 946, 129 S. Ct. 2237, 173 L. Ed. 2d 1265 (2009) (holding that a group that convenes even if only to carry out criminal activities may meet the definition of an enterprise for RICO purposes). The critical determination in evaluating whether "the association of individual entities," however loose{2022 U.S. Dist. LEXIS 12} or informal, ... furnishe[d] a vehicle for the commission of two or more predicate crimes." United States v. Goldin Indus., Inc., 219 F.3d 1271, 1275 (11th Cir. 2000).  Plaintiff has shown herein that the "RICHMONDS 1 and 2,"  e2COMPANIES, its subsidiaries and other unrelated companies such as Mick Law and UMB Bank, function as a unit to achieve the common and continuing purpose of defrauding "TUSHA," private investors, inventors, sub-contractors and bond holders by engaging in multi-faceted schemes described herein that include but do not limit to (1) the use of sham legal entities as described above to hide from the intended victims the true nature and purpose of the e2COMPANIES

unlawful business practices; (2) to conceal acts of wire fraud in violation of 18 U.S.C. § 1343; (3) acts of mail fraud in violation of 18 U.S.C. § 1341; (3) acts of fraudulent conversion and theft by deception; (4) conspiracy to commit fraud upon investors, bond holders, sub-contractors "TUSHA" and inventors, via theft by deception, fraudulent conversion and unlawful falsification of financial records to conceal the Ponzi scheme; (5) false statements and misrepresentation to "TUSHA," the U.S. Patent Office et al as set forth in greater detail herein, in violation of 18 U.S.C. § 371 and; (6) through a pattern of racketeering activity as described herein, the purpose of which is to achieve the unlawful objectives described above and in the following COUNTS, all in violation of 18 U.S.C. § 1962 et seq; Some or all of the named officers involved in the e2COMPANIES and/or independent operators including Mick Law, who are participating with the Defendant enterprise "...conduct or participate, directly or indirectly, in the conduct of the enterprise" as required. See Reeves v. Ernst & Young, 507 U.S. 170, 185, 111 S. Ct. 1163, 122 L. Ed. 2d 525 (1993)(holding that accounting firm for a farmer's cooperative sued by purchasers of demand notes did not participate in the operation or management of the cooperative's affairs as required to impose liability for accountants under RICO). To the contrary, in this case, "UPDIKE" is directly communicating with James Richmond and "MCe2" clients (Herbata) thus "UPDIKE" is well aware of his obligations to disclose truth to the bond holders and "e2C" customers.  In fact, "UPDIKE" has DIRECTED via email, in December 2022 that James Richmond "get rid" of "TUSHA" by "Friday" OR face disclosure of "TUSHA's" felony record to the bond holders. "UPDIKE" is required to disclose the facts and truth in full to the bond holders whether or NOT "TUSHA" is an employee, sub-contractor, or part owner of the patent by law, or shareholder in "MCe2." Instead, "UPDIKE" clearly directed "RICHMOND-1" to cover up material facts and conceal them from the bond holders related to "TUSHA'S" felony record and this alone is sufficient to satisfy the "participating directly or indirectly in the RICO enterprise for purposes of that element plead here. This fact also makes "UPDIKE" as responsible as "RICHMOND-1" for the torts and injuries inflicted upon "TUSHA. "The Collective Defendants have clearly engaged in a pattern of committing fraud on investors, bond holders, sub-contractors, individuals, and others through the schemes herein described all of which satisfy the "pattern of racketeering activity" element as required because more than two predicate act violations have occurred as described herein and all of the unlawful acts fall within the 4-year statute of limitations. See

- 18 -

H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 237, 109 S. Ct. 2893, 106 L. Ed. 2d 195 (1989)(finding a pattern of racketeering activity where defendant, a telephone company, partook in the same predicate RICO offense on at least two occasions). In this case, not only are there multiple predicates established, but all of the acts are shown to be similar in nature and purpose involving multiple victims using the same or similar methods of commission.

**V.**                                                **COUNT-1**
**FRAUDULENT INDUCEMENT, THEFT BY DECEPTION & UNLAWFUL**
**TAKING OF PROPERTY**
**"the RICHMOND DEFENDANTS," "KHAZZAM" & "e2COMPANIES"**

27. Plaintiff hereby incorporates by reference and adopts paragraphs 1 through 26 as though fully set forth in this section. Under Florida Law, "fraud in the inducement" occurs when one party's ability to negotiate and make informed decisions is undermined by the other party's pre-contractual fraudulent behavior. Bradley Factor, Inc. v. United States, 86 F. Supp. 2d 1140, 1145 (M.D. Fla. 2000). In this case, "the RICHMOND DEFENDANTS," and "KHAZZAM" deceived "TUSHA" into signing a promissory note in the amount of $1.9 million dollars with the caveat that the note would be cancelled upon "KHAZZAM" obtaining a mortgage for the property already deeded to "TUSHA." However, shortly after "TUSHA" moved his family to Florida and took possession of the residence, "KHAZZAM" failed to produce any mortgage. Later, "RICHMOND-2" forced "TUSHA" to sign new documents under duress that were back dated and instead of "e2C" being obligated to pay all expenses of the property directly, "TUSHA" was to pay the expenses and "e2C" was to reimburse "TUSHA." The whole purpose of the agreements relating to the home, was that "TUSHA" would own the property immediately without the tax burden of a $1.9 million windfall. Moreover, "KHAZZAM" was to obtain a mortgage for "TUSHA" (knowing that "TUSHA" had a felony conviction, filed bankruptcy, and had a $1 million tax lien due to "TUSHA'S" conviction) with "e2C" making all the mortgage payments so that "TUSHA" would pay income taxes based on the amount of mortgage payments made each year by "e2C" thereby deferring the $1.9 million of tax liability to "TUSHA" over time. This was a critical inducement for "TUSHA's" decision to move his family from Maryland to Florida as well as to

- 19 -

join the "e2C" network of companies. In essence, the deferred tax liability had no effect on "TUSHA's" ability to own and live in the residence and this quid pro quo is why "TUSHA" agreed to redesign the R3Di for "e2C" and bring in a $3 billion dollar contract related to that design. As well, "TUSHA" was to own 34% of "MCe2" which was to own the Patent on the R3Di because he participated in the invention of the double inverter system that made it work. Due to the Defendant's misrepresentations and fraud in the inducement as defined at law, "TUSHA" is now saddled with $1.9 million in unlawful debt and the Defendants have initiated foreclosure on the quid pro quo when in fact, the $1.9 million exchange was for work already performed by "TUSHA."  Plaintiff has legal title to and owns the property based upon the original agreements and the work that he ("TUSHA") performed for the Defendants. It is no fault of the Plaintiff that the Defendants have failed to perform their end of the bargain. Any action taken by the Defendants now, that seeks to take the Florida property from "TUSHA" can only amount to a theft by deception in that "TUSHA" was given the property by deed, paid for by "e2C" as a quid pro quo for the work "TUSHA" was to perform, work that "TUSHA" did in fact perform, and the relevant documents are only for the purpose of the tax deferment issue which is what the Defendants' promised "TUSHA" could and would be done. The Defendant's failures to obtain the mortgage do not negate "TUSHA's" legal right to the property free and clear as it was when he took possession. The promissory note signed by 'TUSHA" at that time, was to be cancelled by the mortgage that was to be expensed to and paid by "e2C" upon which "TUSHA" would receive a 1099 for the expensed payments as they were made and the only thing that has changed now is that "e2C" must mark the note paid since it need not make any mortgage payments to any third party on behalf of "TUSHA," however, "e2C" should be required by order of this court to mark the note satisfied or invalidate it ab initio; (1) because "TUSHA" performed the work for which "e2C" and "MCe2" contracted per the related agreements and the Defendants received substantially significant benefit to the tune of $700 million dollars in company valuations based upon "TUSHA's" work product; and (2) the tax deferment issue is not relevant to the fact that "e2C" exchanged as consideration for "TUSHA's" work product to be performed the amount of $1.9 million in cash for the purchase of the Florida home and then deeded the home to "TUSHA," as a quid pro quo for his entering into the related employment and sub-contractor agreements which "TUSHA" at all times relevant performed as required. "TUSHA" NEVER AGREED to pay ONE CENT for the

- 20 -

property as is clearly reflected in the related documents. In fact, "e2C" was to pay not only any and ALL mortgage payments that were to become due for the property (if a mortgage was obtained) said mortgage to be obtained for the sole purpose of deferring tax liability to "TUSHA." The $1.9 million note was between "TUSHA" and "e2C" and NO CONSIDERATION was given to "TUSHA" in exchange for the NOTE because "TUSHA" was not indebted to "e2C" for any amount of money as proven by the related documents. Finally, the home was titled to "TUSHA," paid for in cash, and all related documents establish that "e2C" was to pay ALL indebtedness and other costs of the home if a mortgage was placed on the home leaving "TUSHA" free of debt or expense related to the home. The Defendants have since literally extorted "TUSHA's" work product, stolen his Intellectual property rights including but not limiting to his rights as an inventor on the R3Di Patent, and now seek to foreclose on a promissory note that was executed without "consideration" or something of equal "VALUE" to "TUSHA" in exchange for the promissory note, thus the note is invalid as a matter of law. Apparently, "e2C" recently filed a mortgage lien on the property but again, there is no basis in fact or at law that gave "e2C" any right to file such a mortgage. Therefore, "TUSHA" seeks this Court to invalidate any mortgage or other type of lien filed on the property by any of the Defendants or Defendant companies because no factual basis exists for any such lien to exist, and it is therefore invalid as a matter of law. See LSREF2 Baron, L.L.C. v. Tauch, 751 F.3d 394, 399 (5th Cir. 2014)("The promissory note produced by the [holder] constitutes prima facie proof of [the maker's] indebtedness to [the holder].")(citation omitted). Once produced, the burden shifts to the maker of the note to show that the debt in unenforceable. "...in a suit on a promissory note, by the [holder] against the maker, the [holder] is entitled to "the presumption that the instrument was given for value received" but "the presumption is rebutted if the maker casts doubt upon the consideration." Sonnier v. Gordon, 52,650, p.4 (La. App. 2. Cir. 5/22/19). Also see Williston on Contracts § 7:14 (4th ed. 2014)(explaining that mutuality of obligation can be viewed as simply another "way of stating that there must be valid consideration"). In the instant case, not only has "TUSHA" rebutted the presumption of indebtedness for any note or mortgage relevant to the Florida property, he has proved that neither party intended "TUSHA" to pay one cent for the property whether or not any mortgage was obtained and thus there is no basis in fact for any note to even exist. Furthermore, "it is quite elementary that the promise of one party is a valid consideration for

- 21 -

the promise of the other party." Texas Farm Bureau Cotton Ass'n v. Stovall, 113 Tex. 273, 253 S.W. 1101, 1105 (Tex. 1923). It is clear from the documents that "e2C" promised to make all mortgage payments on the property and to cover other related expenses. "the RICHMOND DEFENDANTS" are clearly able to speak for "e2C" as they both own 84% of the shares and "KHAZZAM" holds 14%. "TUSHA" agreed to an employment contract, a 34% stake in "MCe2" and other compensation set forth in the sub-contractor agreements including the home being paid for by "e2C." Even considering another well settled principle at law; It is "a settled principle of law that '[t]he mode of performance required by a written contract may be varied by a subsequent{2016 U.S. App. LEXIS 6} oral agreement based on a valid consideration.'" Cambridgeport Sav. Bank v. Boersner, 413 Mass. 432, 597 N.E. 2d 1017, 1021 (Mass. 1992)(citation omitted). Such oral modifications "may be oral or implied." Cochran v. Quest Software Inc., 328 F.3d 1, 9 (1st Cir. 2003)(citing Rogers v. Rogers & Brother, 139 Mass. 440, 1 N.E. 122, 122-23 (Mass. 1885)). In this case, it is obvious that there are oral representations that formed the factual predicates for the related agreements, which include, that "TUSHA" was to obtain a free and clear title to the property in exchange for his agreement to an employment contract as well as performance on certain sub-contractor agreements. The records reflect this. But nowhere, is there any document in existence, that states "TUSHA" was to pay for the home OR reimburse "e2C" for the home, rather, all documents state to the contrary, thus there is no basis in fact for the Defendants to make any claim against the residence in which "TUSHA" and his family now live.

28. On or about September 2020, up through 2021, "the RICHMOND DEFENDANTS" individually and on behalf of "e2C" and "KHAZZAM," fraudulently induced "TUSHA" to engage in an employee contract with "e2C" and several sub-contractor Agreements with "MCe2" attached at Exhibit-F, fraudulently representing that "TUSHA" would be compensated for consulting and other services provided to "MCe2" and who according to "the RICHMOND DEFENDANTS," would be doing legitimate business and would be in fact, well-funded by "e2C." As set forth in greater detail above, "the RICHMOND DEFENDANTS" defaulted on all of the relevant agreements failing to follow corporate formalities as set forth above including unilaterally making decisions in violation of the "MCe2" Operating Agreement i.e., saddling "MCe2" with $6 Million in debt that belongs to "e2C" absent so much as consulting

with "TUSHA;" hiding financials and failing to discuss with "TUSHA" taking on debt; making statements to a CI that "the RICHMOND DEFENDANTS" can do as they please with "MCe2" because they control the majority of the shares; failing to make payments to "TUSHA" when due, engaging in Ultra Vires and/or other fraudulent activity including but not limiting to lying to the public falsely claiming inter alia that R3Di units were deployed all over the United States and in operation; and, lying to "TUSHA" as to the true purpose of the sub-contractor agreements which in fact, were nothing but a conduit for "the RICHMOND DEFENDANTS" and "KHAZZAM" to further their investment fraud and Ponzi scheme by gaining intellectual property from "TUSHA" per the referenced agreements and then using "TUSHA's intellectual property in the schemes referenced herein to deceive, defraud and steal money from investors, bond holders, sub-contractors and "TUSHA" as outlined above resulting in financial loss to "TUSHA" in part, as follows:

> a) $1.9 Million mortgage that was represented to be expensed to "e2C" as part of "TUSHA's" overall compensation package for developing the double conversion technology for the R3Di patent;
>
> b) failure to pay expenses per the agreements leaving an outstanding balance in excess of $25,000;
>
> c) loss of shares in "MCe2" which absent this described corruption, would have value near $61 Million.  (This loss is addressed in another fraud Count thus no monetary amount is set forth here)

Wherefore, "TUSHA" seeks an award for compensatory damages in the amount of $1.9 million via the Court declaring the mortgage on "TUSHA's" home in Fort Myers, FLORIDA, void ab initio and awarding the property to "TUSHA;" an award for compensatory damages in the amount of $25,000 for unpaid expenses "due "TUSHA" per contractual agreements; and treble damages award of $5.775 Million for punitive sanctions as permitted under the RICO for the violations stated.

**VI.**              **COUNT II**
**FRAUDLUENT CONVERSION OF INTELLECTUAL PROPERTY – THEFT OF PATENT RIGHTS RELATED TO R3Di DOUBLE CONVERSION TECHNOLOGY - UNJUST ENRICHMENT**
**"the RICHMOND DEFENDANTS," "KHAZZAM" & "e2C"**

- 23 -

29. Plaintiff incorporates by reference paragraphs 1 through 28 and hereby adopts each paragraph as though fully set forth in this section. To carry out the Fraudulent Conversion of "TUSHA's" Intellectual property rights to the R3Di patent and conversion of "TUSHA's financial interest in the patent through dilution of his shareholder interest in "MCe2," "the RICHMOND DEFENDANTS" exerted total and complete control over ALL "e2COMPANIES" and its subsidiaries including "MCe2," ignoring all corporate formalities and abusing the rights of minority shareholders. In fact, as demonstrated above, "MCe2" is an alter ego of "the RICHMOND DEFENDANTS" "KHAZZAM" and "e2C" because the corporate formalities are defacto non-existent evidenced by inter alia the fact that $6 Million of "e2C" debt was unilaterally transferred to "MCe2" in violation of the "MCe2" Operating Agreement absent approval or even discussion with "TUSHA" who was then acting President of "MCe2" as well a 34% shareholder. (See Exhibit-G) In addition, in December 2022, "the RICHMOND DEFENDANTS" stated in writing via emails that "MCe2" is "defunct" when in fact, the Herbata contract is an "MCe2" asset that was procured and executed by "TUSHA." It is consequently axiomatic that "MCe2" was formed for an improper and illegal purpose, i.e., to commit fraud upon "TUSHA," Herbata, private investors, bond holders, sub-contractors including "TIDE" (owned by "TUSHA") and others for the benefit of "the RICHMOND DEFENDANTS," "KHAZZAM" and "e2C." "The RICHMOND DEFENDANTS," in June 2022, misrepresented to bond holders that revenue would commence from Herbata, in 2022, thus "the RICHMOND DEFENDANTS," "KHAZZAM" and "e2C" were able to continue their Ponzi activity deceiving bond holders, "TUSHA" et al., while at the same time converting all value of "MCe2" over to "e2C." According to the Securities & Exchange Commission, a Ponzi scheme is defined as: "...an investment fraud that pays existing investors with funds collected from new investors....Ponzi schemes require a constant flow of new money to survive." With little or no earnings (as here), "when it becomes hard to recruit new investors, or when large numbers of investors cash out, these schemes tend to collapse."
http://www.investor.gov/introduction-investing/investing-basics/glossary/ponzi-schemes

a) On or about March 2021, "TUSHA" introduced "RICHMOND-1" to the Herbata data center business opportunity and devoted thousands of hours to completing the transaction on behalf of "MCe2." As

- 24 -

"RICHMOND-1" has publicly acknowledged, "the purchase would never have come to fruition without "TUSHA's" acumen and tireless efforts." While this transaction was executed by "TUSHA" for and on behalf of "MCe2," "the RICHMOND DEFENDANTS" and "KHAZZAM," in violation of all of the service agreements entered into with "TUSHA," as well as the "MCe2" Operating Agreement, and in violation of 18 U.S.C. §§ 1341, 1343, fraudulently converted the Herbata contract from an "MCe2" asset to an "e2C" asset thereby causing financial injuries to "TUSHA." (wire and mail fraud transactions listed at Exhibit-I)

b) In fact, "the RICHMOND DEFENDANTS" and "KHAZZAM" dominate and control "e2C" as well its subsidiaries including "MCe2," to the extent that the corporate formalities are non-existent, such that these majority shareholders are in fact alter egos of the LLC's they control; and, as shown herein, each "e2C" LLC or subsidiary referenced is being used fraudulently for improper purpose which has caused direct injury to "TUSHA" et al. See Angueira v. Trujillo (In re Trujillo) 607 B.R. 734, 740 (Knkr. S.D. Fla. 2019)(citing Molinos Valle Del Cibao, C Por A> {636 B.R. 860} v. Lama 633 F.3d 1330, 1349 (11th Cir. 2011); also, Estate of Juanita Jackson v. Gen.Elec. Capital Corp. (In re Fundamental Long-Term Care, Inc.), 507 B.R. 359, 373 (Bankr. M.D. Fla. 2014); Gasparini v. Pordomingo, 972 So. 2d 1053, 1055 (Fla. 3d DCA2008).

c) Because the Herbata contract would produce $3 billion in revenue over 15 years, on or about April 2022, "the RICHMOND DEFENDANTS" and "KHAZZAM" took the opportunity to continue their pattern of seeking to raise hundreds of millions of dollars through false representations. In fact, these Defendant's new bond financing offerings were predicated upon misrepresenting the Herbata contracts revenue projections to begin in 2022. When that did not happen, the misrepresentations continued to include that Herbata would produce $70 million in revenue for "e2C" in 2023, a physical impossibility.

d) When Herbata learned of this in late 2022, Herbata flat out DENIED that these "representations" made by the Defendants were based on reality because full planning approval of the project has not yet occurred, and the project is not scheduled to be built until 2025. Therefore, on December 1, 2022, Herbata told "KHAZZAM" that his statements are not true and followed up with an email directing "KAZZAM" to stop using "Herbata" to secure "e2COMPANIES" investors. (See Exhibit-E)

e) In July 2022, Defendant James Richmond issued a press release sent over the PR news wire in violation of 18 U.S.C. § 1343, falsely stating

its bond holders bonds were secured by asset backed contracts and a host of other false statements as highlighted in the attached press release. Other misrepresentations made throughout 2022 include (1) "we have thousands of R3Di units placed throughout the United States." (There are NO UNITS placed anywhere and NONE that are operational); "The R3Di has passed UL testing" when in fact it has NOT passed UL testing. (See Exhibit-D)

f) In December 2022, "RICHMOND-1" concealed his true intentions to take over "MCe2" by claiming that "MCe2" "was bankrupt and had no assets" when in fact, the Herbata contract is an "MCe2" asset worth over $3 billion dollars. By falsely claiming "MCe2" is "defunct and bankrupt," the Defendants believe they can simply steal the Herbata contract and flip it over to "e2C" thereby robbing its value from "TUSHA" while simultaneously stripping all value of "MCe2" leaving it loaded with $6 million of debt that belongs to "e2C!" (See Exhibit-H) Considering that the Herbata contract is the primary asset of real value supporting the "Valuation" of ANY "e2COMPANIES," it was and remains critical for the Defendant's overall schemes to succeed, that they steal this asset in its entirety, and they have in fact, done so. As a result of this fraudulent conversion of the Herbata contract, "e2C" received a new VALUATION of $230 Million now being used to raise new bond investment for "e2C." Worse, "TUSHA" was deceived into engaging in employment with "e2C" as alleged as well as deceived to execute contractual agreements with "MCe2" not knowing or ever being told that the entire operation is in fact, a Ponzi scheme as defined by the SEC. Consequently, "TUSHA's" injuries are a direct result of the herein named Defendants misrepresentations and unlawful actions as stated above and herein for which he seeks relief as follows:

1.  A judgment and Award against the Defendants named in this Count, Jointly and Severally, for damages in the amount of $61 million dollars which represents 34% of the $230 Million "Valuation" that is in fact, predicated upon the Herbata contract procured by "TUSHA;"

2.  A Judgment and Award against the Defendants named in this Count, in the amount of $1 million dollars for fraudulent conversion of "TUSHA's" Patent rights in violation of U.S Patent Law i.e., failing to report "TUSHA" as an inventor on the patent application;

3.  A Judgment and Award against the herein named Defendants Jointly and Severally for Compensatory

damages in the amount of $99 Million dollars for unjust enrichment via fraudulent conversion and theft of "TUSHA's" intellectual property described;

5.  A Judgment and Award against the herein named Defendant's Jointly and Severally for treble damages under RICO in the total amount of $483 Million dollars which covers 1, 2 & 3 above.

VII.                          **COUNT III**
                    **CIVIL RICO CONSPIRACY**
               **ALL HEREIN NAMED DEFENDANTS**

30. Plaintiff incorporates by reference and hereby adopts paragraphs 1 through 29 as though set forth fully in this section. Between September 2022 and December 2022, Defendants James Richmond, Jeanne Richmond, Alexis Khazzam, Bradford Updike, and Mick Law, did in fact conspire with one another to, and did in fact, fully execute an unlawful scheme to defraud Plaintiff "TUSHA" via use of the U.S. Mail and Wire facilities in violation of 18 U.S.C. §§ 1341, 1343 and 18 U.S.C. §§ 1962, 1963 et seq., as set forth in the preceding paragraphs and below. (See attached Acts of Mail Fraud by each named Defendant @ Exhibit-I) These unlawful schemes included transferring $6 Million of debt belonging to "e2C" over to "MCe2" in violation of "MCe2's" Operating Agreement, then falsely claiming in letters and emails that "MCe2" was "defunct" and "bankrupt" while simultaneously telling the public on the internet that "MCe2" was founded by Defendant James Richmond and operating as usual. On December 1, 2022, "the RICHMOND DEFENDANTS" told "TUSHA" that they could have no further association with him due to required "investor disclosures" of his felony record. Documents were then prepared and sent via U.S. Mail and via fax transmission to "TUSHA" terminating his employment and all of his sub-contractor agreements. "TUSHA" was given two days to execute the documents. To entice "TUSHA" to comply, the Defendants offered "TUSHA" 5% of net profits of "MCe2" opposed to his 34% ownership and a redemption agreement offering $100 for his shares. "TUSHA" stated to James and Jeanne Richmond that this was unacceptable and unfair. In response, "the RICHMOND DEFENDANTS" locked "TUSHA" out of all email and company computers

and stated that they were closing down Mission Critical e2, LLC because it was "defunct and bankrupt." Defendants "UPDIKE" and "MICK LAW" sent an email to James Richmond demanding that Richmond "get rid" of "TUSHA" by Friday or face disclosure of "TUSHA's" felony record to the bond holders. Both "UPDIKE" and "MICK LAW" were required to disclose "TUSHA's" record when "TUSHA" disclosed the felony in the agreements executed by the Defendants, not hide it to be used later at a convenient moment to justify ousting "TUSHA" through violations of law in an attempt to cover up their failure to disclose to the bond holders.

31. On December 4, 2022, Defendant James Richmond changed the "MCe2" website noting himself as its "Founder" and removed "TUSHA" as its "Founder." On or about December 5, 2022, "the RICHMOND DEFENDANTS" and "KHAZZAM" then held a dinner function at the Capital Grille in Naples, Florida and invited "MCe2" clients including Herbata to attend. At this dinner, Defendant "James Richmond" misrepresented to Herbata et al., that he and "TUSHA" had a simple disagreement, but everything else was fine with "MCe2." This statement is false for the reasons stated above.

32. On December 5, 2022, "the RICHMOND DEFENDANTS" rewrote the entire "HISTORY" of "MCe2" listing Defendant "James Richmond" as the sole founder of "MCe2" and "the mastermind" behind developing the subsidiaries "MCe2" and Palm Energy LLC. Upon investigation, information and belief, Plaintiff avers that Palm Energy LLC was used to purchase and sell energy that is produced from old, antiquated equipment, the purpose of which was to further conceal the fact that "e2C" is a Ponzi scheme that has no real revenue. According to a CI providing information to Plaintiff, Palm Energy simply buys and sells energy to create the appearance that at least one subsidiary of "e2C" earns revenue to pay interest and return principle to bond holders.

33. As of December 5, 2022, another objective of conspiracy was achieved, and "TUSHA" was unlawfully removed from "MCe2," his shares devalued and destroyed by the named Defendant's unlawful actions of transferring debt while transferring the only asset, (the Herbata contract) over to "e2C" which was then used to fraudulently obtain a $230 Million

- 28 -

1  VALUATION for "e2C" when in fact, the contract belongs to "MCe2." "MCe2's" Operating

2  Agreement forbids this Ultra Vires activity as stated throughout this pleading and by these acts,

3  TUSHA" was defrauded of Millions of Dollars for the reasons stated.

4

5          34. WHEREFORE, Plaintiff "TUSHA" seeks a Judgment and Award for against the

6  herein named Defendants Jointly and Severally for $61 Million which is the Valuation of

   "MCe2" based upon the Herbata contract procured by "TUSHA" and a Judgment and Award

7  against the herein named Defendants Jointly and Severally for $183 Million in treble damages

8  for the RICO violation equaling a total of $244 Million Dollars.

9

10  **VIII.**                                **COUNT IV**
                     **AIDING AND ABETTING CONSPIRACY TO EXTORT MONEY &**
11                   **PROPERTY FROM "TUSHA" & TO DECIEVE INVESTORS &**
                                      **BOND HOLDERS**
12               **"MICK LAW, "JAMES RICHMOND," "BRADFORD UPDIKE**

13

14          35. Plaintiff incorporates by reference and hereby adopts paragraphs 1 through 34 as

15  though set forth fully in this section. In or about March 2022, Defendant "James Richmond"

16  procured a Valuation of "e2C" in support of ongoing bond issuances which in fact, were

    supported in large part by future potential revenue producing contracts. Defendant "James

17  Richmond," to mislead investors and/or bond holders, took into account contracts procured by

18  "TUSHA" that belonged to "MCe2," and misrepresented that the "MCe2" contracts belonged to

19  "e2C," the purpose of which was to cut out "TUSHA" from participating in the profits generated

20  by those contracts as set forth above. Due to this fraudulent conversion of "MCe2's" contract

21  with Herbata, which violated "MCe2's" Operating Agreement as well as both, state and federal

22  law, "e2C" received a Valuation of $230 Million that was wholly predicated upon the Herbata

23  contract belonging to "MCe2" stolen from "TUSHA." To carry out this scheme, Defendants

24  "Mick Law," "James Richmond," and "Bradford Updike" sent related communications to one

25  another, and "TUSHA" in violation of 18 U.S.C §§ 1341, 1343, as set forth in the wire fraud

26  and mail fraud schedule shown at Exhibit-I which is incorporated by reference and adopted as

27  though fully set forth in this section.

28

                                          - 29 -

36. The collective Defendant's scheme began to unravel in or about September 2022, when "e2C" engaged Defendant "Mick Law" to provide a "Valuation" to support the continued bond issuances. Defendant "Mick Law" contacted a customer of "MCe2" and inquired about the contract with "e2C," only to learn that the customer belonged to "MCe2" and "TUSHA." This prompted "Mick Law" to investigate further and in doing so, discovered that Herbata, did not have any contract with "e2C" but did have a contract with "MCe2" and "TUSHA." Upon that discovery, "Mick Law" began investigation into "TUSHA" and discovered that "TUSHA" had a felony conviction and that "TUSHA" disclosed that fact to "James Richmond" et al at "e2C."

37. According to "James Richmond," in letters sent via U.S. mail and/or fax transmission, "Mick Law" "wants "TUSHA" out of all "e2C" companies and also wants to close down "MCe2." Instead of just disclosing the true facts of the "e2C" company's structure, "Mick Law" and "UPDIKE" stated to "James Richmond" that they would delay the disclosure of their "Valuation" opinion until Friday, December 2, 2022, and that if "James Richmond" did not have it all cleaned up by then, "Mick Law" would disclose the felony record to the bond holders and investors. By these actions, "Mick Law," "James Richmond" and "UPDIKE," aided and abetted the conspiracy to commit fraud on "TUSHA," the private investors and the bond holders as shown throughout this pleading. Further, "Mick Law" and "UPDIKE" conspired with "RICHMOND-1" to help the Richmond's dilute "MCe2" of value thereby defrauding "TUSHA" out of millions of dollars including the outright extortion of the home promised and deeded to "TUSHA" back to "e2C," when in fact, "e2C" was breaching its agreement to pay for the home, its refusal, demonstrating the fraudulent inducement referenced above. "Defendant" James Richmond, by letter, in response to "Mick Law" and "UPDIKE's" directive to oust "TUSHA," began sending a series of erratic and reactive emails designed to strip "TUSHA" of all his value in the home and "MCe2" resulting in injury to "TUSHA."

38. WHEREFORE, Plaintiff "TUSHA" seeks a Judgment and Award against the herein named Defendant's jointly and severally, to recover compensation in the amount of $585,000 for wrongful termination of his employment via the conspiracy as alleged; a Judgement and award to his contractual rights breached by the named Defendants in the amount of $7.5

- 30 -

Million Dollars; and a Judgment and Award for triple damages in the amount of $22.75 Million as permitted under RICO.

**IX.**

## COUNT V
### UNJUST ENRICHMENT
### ALL NAMED DEFENDANTS

39. Plaintiff incorporates by reference and hereby adopts paragraphs 1 through 38 as though set forth fully in this section. Between September 2020 through November 2022, Plaintiff provided his knowledge, intellectual property, designs, conceptual ideas, and staff to the Defendants, for the purpose of developing the Defendant's R3Di micro grid i.e., integrating the R3Di with a double inverter system that resulted in the Defendants gaining a $500 million dollar valuation on the R3Di patent. Likewise, Plaintiff produced a contract for the Defendants with Herbata that resulted in "e2C" obtaining a $230 million valuation. For the reasons set forth above, the Defendants have (1) refused to honor their oral and written commitments to Plaintiff thereby retaining money that belongs to Plaintiff; (2) refused to pay Plaintiff amounts due under both, employment and contractual agreements as set forth above thereby retaining money that belongs to Plaintiff; (3) the Defendants have stolen Plaintiff's designs, eliminated his name from the patent issued for the R3Di and stolen the Herbata contract from "MCe2," a Florida LLC in which Plaintiff is a 34% shareholder, through a fraudulent conversion of "MCe2's" assets to "e2C," thereby, stealing money and property from Plaintiff as set forth in the above company valuations that total $730,000,000. It would be inequitable for the Defendants to escape payment to Plaintiff for the $730 million valuation Plaintiff is directly responsible for producing for the Defendants and which the Defendants have utilized to raise over $100 million from bond issuances, and, which they continue to use to raise new money from issuance of bonds. Plaintiff seeks a monetary award for $300 million dollars as compensation from the Defendants for the unjust enrichment they have gained by stealing Plaintiff's money owed to him for his work for the reasons stated. Plaintiff has met all 4 criteria with respect to pleading this claim and meets the standard established at law. See State Farm Mut. Auto. Ins. Co. v A & J Med. Cntr., Inc., 2015 U.S. Dist. LEXIS 94434, 2015 WL 4387946 at *4 (S.D. Fla. 2012). WHEREFORE, Plaintiff asks the Court to award judgment in the amount of $300,000,000.00 to plaintiff as to COUNT V.

- 31 -

X.                                **COUNT VI**
                          **COMMON LAW FRAUD**
                         **ALL NAMED DEFENDANTS**

40. Plaintiff incorporates by reference and hereby adopts paragraphs 1 through 39 as though set forth fully in this section. From September 2020 through the present time, each individual defendant and all defendants acting collectively, engaged in a criminal scheme to steal money and property from Plaintiff by making false statements upon which Plaintiff relied to his detriment in violation of the Civil RICO statute ss 1962(c); § 1962(d) and the Florida RICO statute § 772.103 which includes but is not limited to the following:

a) That "e2C" was to advance $1.9 million dollars for Plaintiff to purchase a home in Florida, the said home to be deeded to Plaintiff; (This was done to lure Plaintiff to Florida with his family and to entice Plaintiff to provide services to the Defendants and Defendant "e2C," its subsidiaries and alter egos as referenced above);

b) That in order for "e2C" to recover its lump sum cash outlay and alleviate immediate tax liability to Plaintiff, Defendant "Khazzam" would obtain a mortgage on the property and "e2C" would make all payments on the mortgage and expense those payments as income to Plaintiff thereby deferring immediate tax liability on the $1.9 million windfall over time; (Khazzam never produced any mortgage thus "e2C" never made any payments however, that fact changes nothing in that Plaintiff accepted the property under the terms stated and no documents exist that state "e2C" was "financing" any property and this is telling as to the terms of the agreements breached);

c) That Plaintiff was required to relocate to Florida and live in the residence referenced which avoided "e2C" paying approximately $10,000 monthly for Plaintiff to be in Florida working on behalf of "e2C;" (Plaintiff did relocate to Florida and perform services valuable to the Defendants proved by the $730,000,000 evaluations assessed to the defendant companies, but the Defendants have breached all the agreements);

d) As referenced above, Plaintiff relied on the stated representations and relocated his family to Florida as well as produced exactly what the Defendants asked of him and more;

e) As referenced above, without reason, Defendant "Khazzam" sent a text message to Plaintiff shown in Exhibit-J, where "Khazzam" berates

- 32 -

1
2
3
4
5
      Plaintiff about his criminal record despite that Plaintiff disclosed it before
he was hired. Notably, "Khazzam references a "Report" and "Red Flag"
that was pending from Defendant "Mick Law" and the directives to "get
rid" of Plaintiff are from Defendant attorney "Bradford Updike" which
demonstrates fraud not only on the Plaintiff, but a cover up of fraud on the
bond holders based on the Defendant's collective and obvious belief, that
if Plaintiff's disclosed record was disclosed to the bond holders, at least a
30% loss of new funding would result.

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

In fact, whether or not Defendant "Khazzam" or "UPDIKE's" beliefs are valid, (they are not) this issue has nothing to do with any performance of Plaintiff, rather, it represents a fraud upon the Plaintiff, the investors and bond holders as well as yet another scheme to cover up that fraud by continuing to hide Plaintiff's felony record from the investors and bond holders. And, Plaintiff disclosed his record in all respects prior to engaging with the Defendants. "Khazzam" clearly directs that "TUSHA" cannot represent "e2C" companies "at least not publicly" and "UPDIKE" issued a directive to "Richmond-1" that if "TUSHA" is 'not gone by Friday... 'he 'will disclose Tusha's record to the bond holders'" and it is these undisputable facts that resulted in "TUSHA'S" wrongful termination and demonstrates not only an intentional breach of all Tusha's contractual agreements, but proves beyond any doubt the conspiracy to commit common law fraud by concerted actions that resulted in injury to "TUSHA" et al.  More problematic, it is hard to conceive how any investor or bond holder would draw any negative inferences due to Plaintiff's criminal record considering his contributions to the "e2C" companies. Worse, it is only the unlawful actions taken by the collective Defendants that include but do not limit to, hiding the truth from the investors and bond holders to begin with that has directly caused Plaintiff's injuries. This is clearly fraud as defined at law. Actual fraud means "any fraud that involves moral turpitude or intentional wrong" which is "done with wrongful intent." Husky Int'l Elecs., Inc. v Ritz, 578 U.S. 355, 136 S. Ct. 1581, 1586, 194 L. Ed. 2d655 (2016). Plaintiff has stated a claim of common-law-fraud as required pursuant to Rule 9(b) F.R.Civ.P.; see Sun Life Assur. Co. of Can. v Imperial Premium Fin., LLC, 904 F.3d 1197, 1222 (11th Cir. 2018)(quoting Lance v Wade, 457 So.2d 1008, 1011 (1984)). Plaintiff has alleged as required certain false statements of the Defendants, when and where they occurred, who made the statements, how Plaintiff was misled and what the Defendants gained by making the misrepresentations. See Wilding v DNC Servs. Corp., 941 F.3d 1116, 1127

- 33 -

(11th Cir. 2019); also see Ambrosia Coal & Constr. Co. v Morales, 482 F.3d 1309, 1316-17 (11th Cir. 2007)("Civil Rico claims are essentially a certain breed of fraud claims, must be pled with an increased level of specificity."). As of this writing, the Defendants have through named Defendant counsel, filed a foreclosure action against Plaintiff seeking to oust Plaintiff from his home in direct breach of their obligations to Plaintiff as stated above and in breach of the referenced agreements. (See Exh-K, Letter from Defendant Attorneys' Ross C. Allen, and Patrick D. Houston of Whiteford, Taylor & Preston, L.L.P., also Defendants) In that there is no consideration exchanged for the promissory note executed by Plaintiff, the note is invalid at law as is the mortgage filed on the property by Defendant David Shane Smith. In that there is no basis in fact for any foreclosure proceeding against the Plaintiff, the action itself, constitutes not only a fraud on the State Court, but an attempted theft by deception of the Plaintiff's property. Further compounding the problems stated above, Petitioner's conviction involves unpaid taxes and there is a judgment in the amount of approximately $972,000.00 in favor of the government. That judgment attached to the Florida property the day it was deeded to Petitioner. (Petitioner has all along been making payments to the government) The Defendants and their counsel are ALL WELL AWARE of these facts and that the tax lien exists, yet, have filed foreclosure papers which are void as a matter of law (for lack of consideration) in the State Court; and, by omitting these facts the Defendants seek to defraud the United States as well as Petitioner. Petitioner long ago, advised the government that he has pending litigation that should he prevail, he would make substantial payment to the government (and he has done so in one case already) and further, that he would pay off the judgment should his other matters result in recovery of money. Petitioner's position has not changed and the Defendants and their counsel, have no legal right to circumvent the tax lien nor may they continue to proceed now, with what constitutes a fraud on the State Court intended to further defraud Plaintiff AND the government almost One Million Dollars to which the government is as a matter of law, entitled to be paid should the Florida property be mortgaged, sold, and certainly before the deed can legally be transferred to anyone free and clear of liens. The Defendants all know this, and they are concealing the tax lien from the State Court just as they concealed it from the investors and bond holders. This constitutes a vast conspiracy, fraud, obstruction of justice and certainly qualifies as a continuation of the pattern of racketeering activity as alleged in the RICO complaint. For these reasons and those set forth above, this Court should Grant a Temporary

- 34 -

Injunction prohibiting the Defendants from proceeding further with any foreclosure action or other legal action against the Plaintiff; and Grant a Restraining Order as requested prohibiting the Defendants from dissipating any assets and/or severely restricting their use of any funds held in banks or other financial institutions, and Order full disclosure of all assets so that measures can be taken to preserve assets pending this litigation.  Wherefore, Plaintiff asks the Court to award a judgment in favor of the Plaintiff in the amount of $300,000,000.00 as compensatory damages for the common law fraud claim set forth in COUNT VI.

41. Under Florida law, "a plaintiff is entitled to prejudgment interest as a matter of law." SEB S.A. v Sunbeam Corp., 476 F.3d 1317, 1320 (11th Cir. 2007)(quoting Argonaut Ins. Co. v May Plumbing Co., 474 So.2d 212, 215 (Fla. 1985)). The prejudgment rate is set quarterly by the Chief Financial Officer of Florida. See Fla. Stat. §§ 687.01 and 55.03. The prejudgment interest{2022 U.S. Dist. LEXIS 9} rate is the rate effective at the time of entitlement. See TracFone Wireless, Inc. v. Hernandez, 196 F. Supp 3d 1289, 1302 (S.D. Fla. 2016). Plaintiff requests prejudgment interest as to COUNTS I through VI as set forth herein.

Respectfully submitted,

Simon Tusha, pro se
13627 Pine Villa Lane
Fort Myers, FL 33912

**APPENDIX EXHIBITS**

Exhibit - A ------- MCe2 Operating Agreement, Par 9.c and 21.3

Exhibit - B ------- Mr. James Richmond email to Mr. Tusha citing MCe2 is defunct

Exhibit - C ------- Valuation Report & Herbata Contract & Valuation

Exhibit - D ------- July 7, 2022, PRNewswire Press Release Containing False Statements and Misrepresentations

Exhibit - E ------- Email chain between Gerry (Herbata) and James Richmond, Re: False Statements and Misrepresentations

Exhibit - F ------- Simon's Agreements Including House

Exhibit - G ------- Mission Critical e2 Operating Agreement - Sections 9 thru 12 & Shareholder Page

Exhibit - H ------- Mission Critical e2 Profit & Loss Statement

Exhibit – I ------- Acts of Wire Fraud & Mail Fraud by each named Defendant

Exhibit – J ------- Text Message Conversation between Mr. Alexis Khazzam & Mr. Tusha

Exhibit – K ------- Letter from Defendant Attorneys' Ross C. Allen and Patrick D. Houston of Whiteford, Taylor & Preston, L.L.P

- **All referenced Documents will be provided in their entirety at the time of trial.**